UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-145-GWU

| | |
|---|---|
| WILLIAM L. GILBERT, | PLAINTIFF, |
| VS.         **MEMORANDUM OPINION** | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

## INTRODUCTION

William Gilbert brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-145  William L. Gilbert

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

>whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

08-145 William L. Gilbert

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-145  William L. Gilbert

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Gilbert, a 47-year-old former salesperson and cook with a "limited" education, suffered from impairments related to bipolar disorder. (Tr. 14, 18). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 15, 18). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 18-19). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Bill Ellis included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to ever climb ladders, ropes or scaffolds; (2) an inability to more than occasionally bend; (3) a "limited but satisfactory" ability to follow work rules; and (4) a "severely limited but not precluded" ability to relate to co-workers and the public as well as to deal with work stress.  (Tr. 361).  In response, Ellis identified a significant number of jobs which could still be performed. (Id.).  The ALJ later presented an alternative hypothetical question to the expert which included an exertional limitation to light level work restricted from a full range by (1) an inability to ever bend at the waist to pick up objects; (2) an inability to ever climb ropes, or scaffolds; (3) the need for a sit/stand option in 45-minute intervals; (4) a limitation to low-stress, non-production quota jobs; (5) a "limited but satisfactory" ability to follow work rules; and (6) a "severely limited but not precluded" ability to relate to co-workers and the public as well as to deal with work stress.  (Tr. 362).  The expert again identified a significant number of jobs which could be performed.  (Tr. 363).  Therefore, assuming that the vocational factors considered by Ellis fairly depicted Gilbert's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The ALJ dealt properly with the evidence of record relating to Gilbert's physical condition.  The plaintiff noted a history of kidney problems, heart problems

and back pain during the administrative hearing.  (Tr. 353-355).  However, the medical record reveals treatment almost entirely for mental rather than physical complaints.  A physical examination conducted at the Silver Cross Hospital Emergency Room in September of 2004 revealed no sensory or motor deficit and a regular heart rate and rhythm.  (Tr. 94).  In April of 2005, upon a hospitalization for mental problems at Appalachian Regional Hospital, a physical examination revealed the claimant to be grossly intact neurologically.  (Tr. 115).  A history of mitral valve prolapse, hernia and having one kidney was noted at Appalachian in April of 2006 but no physical restrictions were imposed.  (Tr. 194).  Dr. Donna Bell, a treating source, did not impose more severe physical restrictions on the plaintiff than those presented to Ellis during the hearing.  (Tr. 97-111).  Furthermore, the claimant did not raise any issues regarding the ALJ's treatment of the evidence relating to his physical condition.  Therefore, substantial evidence supports this portion of the administrative decision.

The hypothetical factors presented to Ellis fairly characterized Gilbert's mental condition. Psychologist Phil Pack examined the plaintiff and noted possible post-traumatic stress disorder, a history of cannabis abuse, and a possible personality disorder. (Tr. 168). Pack indicated that the plaintiff would have a "good" ability to understand, retain and follow instructions and to sustain attention to perform repetitive tasks.  (Id.).  The claimant's ability would be "poor" in relating to

08-145  William L. Gilbert

others including co-workers and supervisors and "fair to poor" in adapting to the stress and pressures of work activity.  (Tr. 169).  "Poor" was defined as "ability to function is seriously limited but not precluded" while "fair" was defined as "ability to function is limited but satisfactory."  (Id.).  The mental factors presented to the vocational expert were essentially consistent with this opinion.

Gilbert sought treatment for his mental problems at the Cumberland River Comprehensive Care Center.  He was diagnosed as suffering from a major depressive disorder, a schizoaffective disorder, and anti-social personality disorder. (Tr. 289).  The Cumberland River treatment notes also document marijuana use.[1] (Tr. 272).  The plaintiff's functioning was rated as "moderately low" in such areas as societal/role functioning, interpersonal functioning, and cognitive/intellectual functioning.  (Tr. 294).  The mental factors presented by the ALJ in the hypothetical question appear compatible with these limitations.

Gilbert was hospitalized at Silver Cross Hospital in September, 2004 due to suicidal tendencies.  (Tr. 95).  At this time he tested positive for cannibinoids.  (Id.). More severe mental limitations than those found by the ALJ were not reported.  (Tr. 93-96).

---

[1]Public Law 104-121 precludes a finding of disability when alcoholism or substance abuse is a material contributing factor to disability.

10

Gilbert was hospitalized at Appalachian Regional Hospital in April and May of 2005 due to a severe exacerbation of his mental problems. (Tr. 112-133). The plaintiff was diagnosed as suffering from a major depression upon admission and his Global Assessment of Functioning (GAF) was rated at only 25. (Tr. 112). Such a GAF suggests an inability to function in most areas according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. However, the claimant improved with the treatment and upon discharge, his GAF was rated at 85, suggesting minimal symptoms and good functioning in all areas. (Tr. 117). Thus, this report does not indicate the existence of a totally disabling mental condition that would meet the one-year durational requirement of the Social Security Act. 20 C.F.R. § 404.1505(a).

Gilbert was involuntarily hospitalized at Appalachian following another severe exacerbation of his mental problems in April of 2006. The plaintiff alleged having suicidal and homicidal thoughts. (Tr. 193). He was diagnosed with marijuana abuse with a possible substance induced mood disorder, possible major depression, possible dysthymia, possible malingering for secondary gain and an anti-social personality disorder. (Id.). Upon discharge, his condition improved and his GAF was rated at 80, suggesting transient psychological symptoms imposing no more than slight impairment on his functioning. (Id.). Thus, this report also does

not establish a totally disabling condition which would meet the one-year durational requirement.

Jane Brake, a non-examining medical reviewer, opined that Gilbert would be "moderately" limited in such areas as handling detailed instructions, maintaining attention and concentration, working in coordination with or proximity to others without being distracted by them, interacting appropriately with the general public, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting. (Tr. 340-341). These somewhat differently worded limitations are arguably compatible with those presented by the ALJ. The claimant asserts that the hypothetical question did not include several of these limitations such as those relating to attention and concentration and responding to changes. The court notes that neither of these limitations were reported by Pack, the examining source who specifically found a good ability in regard to sustaining attention. The administrative regulations provide that "generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). Thus, any error would appear harmless.

Psychologist Barbara Berk, a Cumberland River staff psychologist, later reported that the claimant suffered from a number of difficult to control symptoms including nightmares, flashbacks, intrusive memories, panic attacks and occasional

suicidal thoughts. (Tr. 345). Berk also noted that Gilbert's physical problems were very significant. (Id.). The psychologist indicated that Gilbert had "extreme difficulty" being around other people and implied that he should be considered totally disabled. (Tr. 346). The ALJ's restrictions relating to the public and co-workers arguably accommodate Berk's somewhat vague mental limitations. To the extent that the psychologist suggested that the claimant was totally disabled, she appeared to take into consideration physical problems outside her expertise and, so, this opinion would not be binding. Furthermore, such an opinion goes to the ultimate finding of disability and is reserved to the Commissioner under the federal regulations. 20 C.F.R. § 404.1527(e)(1). Therefore, this opinion does not support the plaintiff.

Finally, Gilbert asserts that the ALJ erred by failing to include in his hypothetical question all of the mental restrictions indicated by Psychologist William Hilger, an examining consultant. Hilger indicated that the plaintiff would have "questionable" mental potential for performing work activities involving memory, understanding, sustaining concentration and persistence, social interaction and adaptation. (Tr. 138). The examiner's restrictions are at best very vague and not necessarily inconsistent with those found by the ALJ. Hilger indicated that another mental health examination should be conducted. (Id.). Pack performed a second examination and the ALJ's findings were consistent with his findings. Pack's opinion

08-145  William L. Gilbert

offsets that of Hilger.  Therefore, the court finds that the ALJ could properly reject Hilger's opinion.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 4th day of March, 2009.

Signed By:

*G. Wix Unthank*

United States Senior Judge

14